FOR PUBLICATION

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION

RICHARD DAVIS and PHEBE SCWHARTZ, )
)
    Appellants, )
) D.C. Civ. App. No. 2006-236
    v. )
)
ALFRED TURNER, ) Super. Ct. SM No. 593/2006
)
    Appellee. )
)
)

On Appeal from the Superior Court of the Virgin Islands,
The Honorable Leon A. Kendall presiding.

Considered: November 4, 2011
Filed: September 14, 2018

BEFORE: **CURTIS V. GÓMEZ**, Judge of the District Court of the Virgin Islands; **WILMA A. LEWIS**, Chief Judge of the District Court of the Virgin Islands.[1]

APPEARANCES:

**Richard Davis, Esq.**
St. Thomas, U.S.V.I.
    *Pro se*

**Alfred Turner**
St. Thomas, U.S.V.I.
    *Pro se*

MEMORANDUM OPINION

PER CURIAM

    Following a bench trial in the Small Claims Division of the Superior Court of the Virgin Islands, Division of St. Thomas and

---

[1] While Judge Julio A. Brady of the Superior Court of the Virgin Islands, Division of St. Croix, sat on the panel that considered this matter, he retired and passed away before this decision was issued.

St. John (the "Superior Court"), Alfred Turner ("Turner") was granted judgment against Richard Davis ("Davis") and Phebe Schwartz ("Schwartz") on his claim for unpaid rent. For the reasons given below, the Court will vacate the judgment against Davis and Schwartz and remand this case to the Superior Court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 17, 2006, Davis and Schwartz viewed an apartment located at 159 Frydenhoj #3, Redhook Quarter, Apt. No. 4. The apartment was being offered for rent by Alfred Turner. Turner asked for a monthly rent of $1,800 and a security deposit of $1,800. The apartment had three exterior doors, one of which had a screen door.

While viewing the apartment, Davis and Schwartz asked Turner whether they could bring their pet cat, place a television satellite dish on the property, and add another screen door. Davis and Schwartz allege that Turner acquiesced to all of those requests.

On September 19, 2006, Davis and Schwartz agreed to rent the apartment and paid Turner $3,600—$1,800 for the security deposit and $1,800 for the first month's rent. On September 29, 2006, Turner presented Davis and Schwartz with a draft lease agreement (the "September 29 Draft"). The September 29 Draft

provided for a one-year term, and did not include any reference to the satellite dish, the screen door, or Davis and Schwartz's cat.

Davis and Schwartz moved into the apartment on October 1, 2006. On October 7, 2006, Davis gave Turner a signed, modified version of the September 29 Draft (the "October 7 Draft"). The October 7 Draft provided for a six-month term, with rent set at $1,800 per month and a security deposit of $1,800. The October 7 Draft also included a new term authorizing Davis and Schwartz to erect their satellite dish on the property. The October 7 Draft further provided:

> If Tenant abandons or vacates the Leased Premises during the Term of this lease, Landlord may elect to re-enter the premises, and, at Landlord's option, relet the premises. If Landlord elects not to relet the Leased Premises, Tenant shall be liable for the remainder of the rent due under the Lease until its expiration. If Landlord relets the Leased Premises but is unable to relet the Leased Premises for as much rent as would have been paid by Tenant during the period between Tenant's abandonment and the end of the Term, Tenant shall be liable to Landlord for the difference.

*Trial Tr.*, after p. 42.

Davis asserts that Turner became very upset about the inclusion of the new term regarding the satellite dish. Turner deleted that portion of the October 7 Draft before signing it.

On October 15, 2006, after a litany of disagreements between Turner and Davis and Schwartz, Davis and Schwartz told Turner that they intended to vacate the apartment. On October 28, 2006, Davis and Schwartz moved out.

Thereafter, Turner initiated an action in the Small Claims Division of the Superior Court. Turner sought $7,200, equal to four months' rent. Davis and Schwartz counterclaimed, seeking the $1,800 that they had paid Turner as a security deposit.

At the conclusion of the trial, judgment was entered in favor of Turner on his claim and in favor of Davis and Schwartz on their counterclaim. The Court asked Turner whether he intended to re-let the premises or whether he was seeking to collect the full rent owed by Davis and Schwartz. Turner answered that he did not intend to re-let the premises. The Court then recited the portion of the lease providing that, upon abandonment by the tenants, the landlord may opt to collect the entire amount of rent due rather than re-let the premises. The Court awarded Turner a judgment of $5,400, stating that this "represents the $7,200, offset by the $1800 security deposit." *Id.* at 41:11-13.[2]

---

[2] $7,200 is the amount of rent Davis and Schwartz would have paid in four months. Under the terms of the lease, the full six month term at $1,800 per month would amount to $10,800. Subtracting the first month's rent and the security deposit yields $7,200, not $5,400. However, Turner has not raised this issue on appeal and thus it is waived. *See Laborers Int'l Union of N. Arn. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief . . . .").

On December 5, 2006, Davis and Schwartz filed a notice of appeal.

In December, 2006, Davis drove by the apartment at 159 Frydenhoj #3. Davis asserts that he saw "cars and activity at the apartment that led him to believe someone was living there." *Appellants' Br.*, at 5. Davis then hired Gaston E. Tuckett ("Tuckett"), a private investigator. Tuckett conducted surveillance of the apartment on January 31, 2007, and February 1, 3, 8, 9, 12, 13, and 14, 2007. On several of those days, Tuckett observed a car parked outside the apartment and a person entering and walking around inside of the apartment. *Appellants' Ex. D*.

On that basis, on February 15, 2007, Davis and Schwartz filed a motion for relief from judgment in the Superior Court.

On July 18, 2007, Davis filed his appellate brief. The brief raises five issues, including whether "the Superior Court err[ed] in failing to consider appellants/defendants' certified Motion For Relief From Judgement." ECF No. 8, at 10.

On March 30, 2007, Davis and Schwartz sought a writ of mandamus from the Supreme Court of the Virgin Islands (the "Supreme Court") to order the Superior Court to grant the motion seeking relief from the judgment. On June 19, 2007, the Supreme

Court denied the petition on the grounds that Davis and Schwartz had an adequate alternative remedy in the form of the present appeal.

Subsequently, on June 29, 2011, Davis and Schwartz filed a request for expedited judgment. ECF No. 11. In that filing, they indicated that the motion for relief from judgment "was denied on August 10, 2007 with the pendency of this appeal cited as the reason for the denial." *Id.* at ¶ 7.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over appeals of final judgments and orders of the Superior Court filed before January 29, 2007, the date on which the Supreme Court of the Virgin Islands was certified as ready to assume such jurisdiction. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; V.I. CODE ANN. tit. 4, § 33 (2002).[3]

"We review *de novo* questions of law, issues implicating rights protected under the U[nited] S[tates] Constitution, and the interpretation of statute[s]. However, we afford the more deferential clear error review to [the trial court's] factual determinations." *Garcia v. Gov't of the V.I.*, 480 V.I. 530, 534 (D.V.I. App. Div. 2006) (citing *Gov't of the V.I. v. Albert*, 89

---

[3] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2000), reprinted in V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

F. Supp. 2d 658, 663 (D.V.I. App. Div. 2001)); see *also Saludes v. Ramos,* 744 F.2d 992 (3d Cir. 1984). Clear error is shown where the trial court's determination is either "completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data." *Armstrong v. Armstrong,* 266 F.Supp.2d 385, 397 (D.V.I. App. Div. 2003).

"[I]t is the role of the judge in a small claims action to achieve substantial justice, even if it means that a liberal reading would afford relief to a pro se small claims litigant which would not be available to a pro se or other litigant in the Civil Division of the [Superior] Court." *Fuertes v. Martin,* Civ. App. No. 2000-217, 2002 WL 31628425, at *3, 2002 U.S. Dist. LEXIS 17097, at *9 (D.V.I. App. Div. Sept. 4, 2002) (quoting *Ryans Restaurant v. Lewis,* 949 F. Supp. 380, 383 (D.V.I. App. Div. 1996)) (internal quotation marks omitted).

### III. ANALYSIS

In his brief, Davis raises five issues: (1) "Did the Superior Court unfairly preclude appellants from presenting evidence concerning the circumstances surrounding the signing of the lease in question which prevented any showing of fraud and coercion?"; (2) "Were the appellants unfairly precluded from examining their witness as to the appellants' theory of the case

showing fraud and coercion in the signing of the lease in question?"; (3) "Did the court err by determining that the two copies of the lease in question that were submitted in evidence were identical when the original of the lease clearly showed an area whited-out and covering writing underneath?"; (4) "Was the lease void *ab initio* because it contained a clause in violation of Virgin Islands law and common law allowing the landlord to accelerate the lease upon vacancy by the tenant and to collect the rent due for the entire term of the lease, or, in the alternative, did the Superior Court err in enforcing a clause of the lease that is contrary to common law and Virgin Islands law, unconscionable and against public policy?"; and (5) "Did the Superior Court err in failing to consider appellant's certified Motion For Relief From Judgment that presented new evidence not available at the time of trial showing that appellee/plaintiff had rerented the premises in question after choosing in open court to accelerate the lease and assuring the Judge that he intended to leave the apartment vacant?"

The Court will first address Davis's argument that "the court err[ed] by determining that the two copies of the lease in question which were submitted in evidence were identical when the original of the lease clearly showed an area whited out that covered writing underneath." *Appellants' Br.*, at 8-9. Davis

contends that the alteration of the lease rendered the subsequent document void.

Turner and Davis both submitted copies of a signed lease into evidence. With regard to the lease, Davis testified that:

> Your honor, it is our position that the lease before the Court was void from the beginning, ab initio. The original, which I have, happens to have clearly shows [sic] there was white out in section number 24, "Additional Terms and Conditions Agreed to by Both Parties".
>
> In fact, and we'll deal with the circumstances under which this document was signed. In fact, that it was whited out after I signed it and Mr. Turner then signed the lease after that. So it's my feeling it was never a meeting of the minds, there was never a contract there, and for other reasons as well. And we will get into that as we go forward.[4]

*Trial Tr.*, at 15:1-15:18.

Schwartz provided further testimony regarding the signing of the lease. She testified that:

---

[4] Davis characterized his statement as an opening statement. In general, opening statements by pro se parties do not constitute evidence. *Cf. United States v. Sacco*, 563 F.2d 552, 557 (2d Cir. 1977) ("In addition to the foregoing measures, and to avoid any ambiguity in the jury's mind about the unsworn statements of a pro se defendant, it should be made clear to the jury at the outset that anything he says in his 'lawyer' role is not evidence against him or a co-defendant, and his remarks are to be regarded no differently than those of the attorneys in the case."). Nevertheless, the Court is satisfied that Davis's statement may be considered as testimony in this matter because: (1) small claims proceedings are "informal and summary as is consistent with justice," 4 V.I.C. § 111; (2) a judge hearing a small claims matter must conduct the "trial in such manner as to do substantial justice between the parties according to the rules of substantive law, and shall not be bound by the statutory provisions or rules of practice, procedure, pleadings, or evidence, except such provisions relating to privileged communications," Super. Ct. R. 64; (3) Davis's statement was given under oath, *see Trial Tr.*, at 4:8-16; and (4) in light of the other testimony adduced, it is clear that Davis's testimony was based on personal knowledge.

> On the 7th, which is the date that we actually signed the lease agreement and it was whited out, I also signed the apartment guides. And what happened was Richard added to the lease that, as we discussed earlier, that we would, with Mr. Turner, that there would be a pole, which we would pay for the installation, to put the satellite dish on.
>
> And what Richard added to the other clause, the part that's whited out, was that the pole as a fixture on the property would belong to the landlord, but that the satellite dish would belong to the tenants. And Mr. Turner became quite upset about that addition to the lease. He whited it out. Richard said, well, until everybody signs the lease we're still on the month to month. My guess he was intending to say if you'd like we could stay that way. But Mr. Turner basically went off, started yelling, screaming, swearing, stomping back and forth, waving his arms, ranting and raving saying he's the boss.
>
> And Richard was trying to do everything his way and all sorts of things. Basically scared me because I felt like he was going to punch him out.
>
> So those were the circumstances under which the lease was signed. And the apartment guide says no fighting. And it was sort of like, well, this has been totally voided because here is the person who is having us sign something, no fighting, who is fighting with us and who had basically agreed to the satellite dish.

*Id.* at 23:1-24:15.

The Superior Court rejected Davis's argument that there was no meeting of the minds and no lease was formed. Specifically, the court stated:

> The Court notes that Plaintiff's Exhibit Number 1 and Defendant's Exhibit Number 1, which are leases with respect to the premises, appear to be identical, both have been signed by the parties except for what the defendants contend is a portion in the additional terms and condition section that has been whited out.
>
> Notwithstanding that amendment to the document, it is clear that these parties entered into the lease in question for a period of one year effective October 1, 2006--for six months, the Court stands corrected, expiring on March 31, 2007.

Trial Tr., at 34:16-35:6.

The court's conclusion is not supported by the law. The essential prerequisite for the creation of a valid contract is "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Univ. of the V.I. v. Petersen-Springer*, 232 F. Supp. 2d 462, 469 (D.V.I. App. Div. 2002). Where there is no mutual assent, or no meeting of the minds, there is no contract. *James v. Fitzpatrick*, 25 V.I. 124, 127 (Terr. Ct. 1990). Thus, a "reply to . . . [an] offer which purports to accept it but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counter-offer." *Castolenia v. Crafa*, No. ST-13-CV-243, 2014 WL 239427, at *2 (V.I. Super. Jan. 15, 2014).

Here, Turner made an initial offer when he provided the September 29 Draft to Davis and Schwartz. Davis and Schwartz made a counter-offer when they returned a modified lease on

October 7, 2006. Turner in turn made another counter-offer when he deleted those additional terms. Davis then expressly rejected Turner's counter-offer, stating that "until everybody signs the lease we're still on the month to month." *Trial Tr.*, at 23:19-23:21. Thus, the parties' signatures do not establish that there was a valid lease. *See Univ. of the V.I.*, 232 F. Supp. 2d at 469.

Accordingly, the Court will vacate the judgment against Davis and Schwartz and remand this case for further proceedings consistent with this opinion.

An appropriate Order follows.